## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HOMER FRYE,**

    **Plaintiff,**

**v.**                                      **CIVIL ACTION NO. 2:09cv25**
                                                               (Judge Maxwell)

**DR. ANDERSON, M.D.,**
**MR. DIB, Physician's Assistant,**
**MS. LAMBRIGHT, Health Services Administrator,**
**MS. KALD, Nurse,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The pro se plaintiff initiated this case on February 13, 2009, by filing a civil rights complaint against the above-named defendants. On March 31, 2009, the plaintiff was granted permission to proceed as a pauper. The plaintiff paid his initial partial filing fee on April 27, 2009.

On May 26, 2009, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day.

On August 4, 2009, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support. A Roseboro Notice was issued on August 7, 2009. To date, the plaintiff has not filed a response.

### II. The Complaint

The plaintiff, is a former federal inmate, who was released from custody on September 18, 2009. However, he was previously incarcerated at FCI Gilmer located in Glenville, West Virginia. The plaintiff filed his complaint against the above-named defendants pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. In his complaint, the plaintiff alleges that the defendants acted with deliberate indifference to his serious medical needs while he was incarcerated at FCI Gilmer. Specifically, the plaintiff alleges that each and every month from November 2005, through April 2007, he informed each of the named defendants at least once a week of his ongoing pain and suffering caused by a grapefruit sized tumor pressing down on the nerves of his spine. The plaintiff further alleges that following surgery for removal of the tumor, he suffered a massive surgical infection that was caused by the defendants' failure to provide mandatory dressing changes. The plaintiff contends that as result of the defendants' lack of care, he suffers daily pain and has lost the mobility function that a normal thirty-nine year old male should have. Finally, the plaintiff alleges that the defendants were not licensed in the State of West Virginia . As relief, the plaintiff seeks $25,000,000 in compensatory damages and $25,000,000 in punitive damages.

**III. The Answer**

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As support therefore, the defendants assert the following:

- A. Defendant Dib is a U.S. Public Health Service Employee and is therefore entitled to absolute immunity;

- B. The plaintiff's claims are in part barred by the statute of limitations;

- C. The plaintiff cannot establish a claim for deliberate indifference to his medical

    conditions;

  D. The plaintiff's claims that the defendants were not properly licensed in West Virginia are without merit;

  E. The plaintiff has failed to establish a claim for supervisor liability;

  F. The defendants are entitled to qualified immunity; and

  G. The plaintiff's claims against the defendants in their official capacity are barred by sovereign immunity.

**III. <u>Medical History</u>**

The plaintiff's medical records establish that upon his arrival at FCI Gilmer on June 4, 2004, he was on no medication and reported no pain or problems. (Doc. 28-4, p.1). The plaintiff first reported a lump on his neck at a sick call dated February 9, 2006. He indicated that the lump hurt and needed to be checked. (Doc. 28-5, p. 33). On March 1, 2006, he was seen by defendant Dib for evaluation of the lump. The plaintiff stated that the lump had been present for two years. The lump was diagnosed as a lipoma, approximately 4 cm wide and 5 cm long, and the plan was to continue to evaluate it and consider routine removal. (Doc. 28-5, p. 29).

The plaintiff was next seen at a sick call visit on September 29, 2006, complaining that the lump had grown in size and was causing him neck pain. The plaintiff's medical chart indicates that he would be referred to his primary care physician within seven (7) days. (Doc. 28-5, p. 31).

On October 20, 2006, the plaintiff was evaluated in the Special Housing Unit ("SHU") for complaints that the lump was growing and had begun to hurt when he was lying down. Contrary to the initial report that the lump had been present for two years, the plaintiff reported having the lump for ten months. The physician assistant noted that the plaintiff had a nodule at the lower aspect of his neck, 2 ½ in length and 1 ½ wide, which was non-tender and non-mobile. The physician assistant

3

indicated that the plaintiff would be referred to the Utilization Review Committee ("URC") for general surgery. The URC approved the request for surgery on November 7, 2006. (Doc. 28-5, p. 28).

On February 1, 2007, the plaintiff had a surgical consultation. The surgeon noted a large lipoma on the back of the plaintiff's neck which was causing pain in his back and upper extremities. On February 22, 2007, the plaintiff underwent surgery at an outside hospital for removal of the growth and returned to FCI Gilmer that same day. (Doc. 28-4, pp. 2-3). The plaintiff's surgical pathology report concluded that the growth was a benign lipoma composed of fat and connective tissue. (Doc. 28-5, p. 40).

The plaintiff had wound dressing changes performed by a nurse on February 24, 25 and 27, 2007. On February 27th, the nurse noted a slight amount of pus from the left corner of the wound site. Dr. Anderson also saw the plaintiff on February 27th and noted that the site was bandaged with a small amount of serous drainage. Additional dressing changes were performed by a nurse on March 2, 7, and 8, 2007. The nurse noted purulent drainage at the left corner of the wound site. The area was also puffy and tender to the touch. On March 9, 2007, Dr. Anderson saw the plaintiff for increased discharge at the wound site with general malaise and nausea. Dr. Anderson noted serous and purulent discharge at the left incision site, and the area was tender to the touch. The incision was otherwise well-healed. Dr. Anderson noted that the infection appeared to be well isolated to the left corner of the wound site. A culture was done and the wound was dressed. The diagnosis was post-operative cellulitis. The plaintiff was prescribed Bactrim and Rifamprin for 14 days. (Doc. 28-5, pp. 22-23). There are no further notes from FCI Gilmer.

The plaintiff was transferred from FCI Gilmer and arrived at FCI Edgfield on May 9, 2007. He indicated that he had pain in his back and neck from where a tumor had been removed from his

spine two months earlier. (Doc. 28-4, p. 37).However, he also indicated that he suffered no chronic pain, had a pain level of 0-1, and required no pain medication. (Doc. 28-5, p. 16).

Thereafter, the plaintiff was transferred from FCI Edgfield and arrived at FCI Fort Dix on February 11, 2008. (Doc. 28-5, p. 14). He reported back pain on intake but did not present at sick call until July 21, 2009, when he reported pain in the upper back area where the incision was made. He was prescribed naproxen for pain. The plaintiff was next seen on December 8, 2008 at sick call complaining of law back pain secondary to an old gunshot wound. An x-ray was ordered, but no medication was prescribed. The plaintiff last record is from March 27, 2009, when he presented to sick call complaining of pain in the mid-scapular area from the surgical removal of a benign tumor. Examination was normal, and the assessment was unspecified backache. Diagnosis was possible neuralgia due to status-post surgical removal of a benign tumor on the upper back. He was prescribed naproxen for one month for pain and advised to use warm compresses, warm up before exercising or doing physical activity, and consider the use of Elavil if pain persists. (Doc. 28-5, pp. 7-12).

**IV. <u>Standard of Review</u>**

**A. <u>Motion to Dismiss</u>**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir.1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a

claim. Id.

B. **Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at

248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

**V. Analysis**

A. **Mark Dib**

Defendant Dibb is a Commissioned Officer in the United States Public Health Service. Title 42 U.S.C. § 233(a) provides that the exclusive civil remedy available to any individual against a commissioned officer of the U.S. Public Health Service for any actions pertaining to medical, surgical, dental or related functions, is an action pursuant to the Federal Tort Claims Act (28 U.S.C. § 2672). Section 233 (a)

> protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States thus in effect insurers designated public health officials by standing in their place financially when they are sued for the performance of their medical duties.

Cuoco v. Moritsugu, 222 F.3d 99, 108 (2d Cir. 2000). See also, U.S. v. Smith, 499 U.S. 160, 170 n.11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides

in 42 U.S.C. § 233(a) that the FTCA is a plaintiff's sole remedy against Public Health Service employees); Apple v. Jewish Hosp. And medical Center, 570 F. Supp. 1320 (E.D.N.Y. 1983) (motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action). Therefore, pursuant to 42 U.S.C. § 233(a), defendant Dibb enjoys absolute immunity from personal liability for all claims arising from the medical care he provided the plaintiff, and he must be dismissed as a defendant in this action.

**B. Deliberate Indifference - Dr. Anderson/Ms. Kald**

To state a claim under the Eighth Amendment, the plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd

9

Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[1]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts

---

[1] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

Here, even if the plaintiff's lipoma is a serious medical condition, thus satisfying the first element of an Eighth Amendment claim, the medical records cited above clearly establish that the plaintiff received adequate medical supervision at FCI Gilmer for this condition. He was closely monitored, had the lipoma surgically removed, was monitored post-operatively, and received treatment for the infection that developed. Finally, to the extent that the plaintiff may be alleging that his medical care at FCI Gilmer amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, *supra* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g,, Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the plaintiff received "bad care," he did receive care. Accordingly, nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendants have been deliberately indifferent to his medical needs, and accordingly, the plaintiff's complaint as it relates to his 8th Amendment claims under Bivens should be dismissed for failure to state a claim.

## C. Supervisor Liability-Ms. Lambright

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citations omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each

defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case.[2]

In this case, plaintiff does not allege any personal involvement on the part of Ms. Lambright. Instead, it appears that plaintiff has named this defendant merely her official capacity as the Assistant Health Services Administrator and then Health Services Administrator at FCI Gilmer. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits... 'generally present only another way of pleading an action against an entity oh which an officer is an agent.'"). Thus, remedy under Bivens is against federal officials in their individual capacities, not the federal government. Accordingly, the plaintiff's claim against Ms. Lambright should be dismissed with prejudice.

### D. The Plaintiff's Claims Regarding Proper Licenses

A majority of the plaintiff's complaint alleges that the defendants "acted by fraud and deceit" in treating him without being licensed for their respective medical positions. (Doc. 1, pp.

---

[2]In a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 297, 401 (11th Cir. 1986).

2-3). The plaintiff appears to believe that each of the defendants was required to be licensed in the State of West Virginia . However, the same is not the case, and it is clear that each of the four defendants was properly licensed to work within the BOP.

BOP Program Statement P6027.01, <u>Health Care Provider Credential Verification, Privileges and Practice Agreement Program</u> states that all health care providers within the BOP shall have a credential portfolio which contains verified documentation of: (1) professional education; (2) post-graduate training; and (3) professional licensure or any certification such as National Commission on Certification of Physician Assistants ("NCCPA") certification for PA-C. <u>See</u> P.S. P6027.01, pp. 3-4. The policy states only that "the file must always contain a current verified license." <u>Id</u>. Physicians and Physician Assistants who are nationally certified and who work in the BOP are not required to hold a state license. Additionally, the policy does not require health care providers to be licensed in the state in which their respective institution is housed; only that they maintain a license. <u>Id</u>.

Defendant Anderson is a physician, who is board certified by the American Board of Family Physicians and has been licensed by the State of West Virginia since 2003. (Doc. 28-4, p.1). Defendant Kyle has been licensed as a Registered Nurse in the State of South Carolina since 1998. (Doc. 28-6, p. 2). Defendant Lambright has been a Licensed Practical Nurse in the State of Kentucky since 1980. (Doc. 28-2, p. 1). Finally, Defendant Dib has been a National Certified Physician Assistant through the NCCPA since 1977. Therefore, each of the defendants had the necessary credentials to work as a health care provider for the BOP during the relevant time period of this complaint.

## VI. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. 27) be **GRANTED**, and the plaintiff's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim upon which relief can be granted.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: October 1, 2009.

    /s/ James E. Seibert
JAMES E. SEIBERT

UNITED STATES MAGISTRATE JUDGE